# Bolton v. Central Trust & Savings Company, Appellant.

*Contract—Construction—Work to be satisfactory to another.*

1. Where one party contracts to perform certain work to the satisfaction of another it is to the judgment of the latter he submits the question whether or not the work has been done according to the contract. The judgment, however, contemplated by the rule must be reached honestly and in good faith. It cannot be the result of mere whim or caprice, or a subterfuge to avoid the payment of money really due; much less can it be the offspring of any collusion or fraud.

2. Where a contractor agrees to plaster fifty-four houses to the satisfaction of the owner and his guarantor, and the latter receives from the owner money sufficient to pay the plasterer, and payments are made from time to time without any expression of disapproval of the work, and the last payment is refused by the guarantor on the ground of insufficiency of funds, the case is for the jury to determine whether or not the dissatisfaction with the work shown by the guarantor at the trial is not a mere subterfuge to relieve the guarantor from the obligation to pay.

Argued Oct. 11, 1909.    Appeal, No. 57, Oct. T., 1909, by defendant, from judgment of C. P. No. 3, Phila. Co.,

606 BOLTON *v.* CENT. TRUST & SAV. CO., Appellant.

Statement of Facts—Opinion of the Court. [42 Pa. Superior Ct.

June T., 1907, No. 4,258, on verdict for plaintiff in case of John G. Bolton et al., trading as John G. Bolton & Sons, v. Central Trust & Savings Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a building contract. Before MOSCH-ZISKER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $236.50. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant, and (2) in refusing judgment for defendant non obstante veredicto.

*J. Hector McNeal*, for appellant.—It is well settled in Pennsylvania that while work done under a contract which stipulates that it shall be satisfactory to one of the parties, cannot be rejected from mere caprice, still a bona fide rejection is a good defense to an action thereon, and it is insufficient to show that such party ought to have been satisfied: Meacham v. Gardner, 27 Pa. Superior Ct. 296; Kennedy v. Poor, 151 Pa. 472; Dyeing Machine Co. v. Knitting Mills, 19 Pa. Superior Ct. 501; Payne v. Roberts, 214 Pa. 568; Singerly v. Thayer, 108 Pa. 291; Seeley v. Welles, 120 Pa. 69; Howard v. Smedley, 140 Pa. 81.

*Frederick J. Shoyer*, for appellee, cited: Hartupee v. Pittsburg, 97 Pa. 107; Malone v. City, 12 Phila. 270; Whelen v. Boyd, 114 Pa. 228; Terra Cotta Co. v. Sharp, 7 Pa. Dist. Rep. 544; Kennedy v. Poor, 151 Pa. 472; Hebert v. Dewey, 77 N. E. Repr. 822.

OPINION BY HEAD, J., May 12, 1910:

Neither at the trial nor upon the argument of this appeal did the plaintiffs attempt to deny the existence of the rule of

law which declares that where one party contracts to perform certain work to the satisfaction of the other, it is to the judgment of the latter he submits the question whether or not the work has been done according to the contract. The learned trial court recognized and emphasized this rule in his charge, and of his instructions to the jury there is no complaint. But the usefulness, nay the very existence of the rule, depends upon the recognition and enforcement of its manifest limitation. The judgment contemplated by the rule must be reached honestly and in good faith. It cannot be the result of mere whim or caprice, or a subterfuge to avoid the payment of money really due; much less can it be the offspring of any collusion or fraud.

Clearly then, where the existence of such an honest judgment becomes the sole issue between the parties—as it is in this case—the proper determination of that issue cannot always be permitted to rest on the bare declaration of the party himself. In the trial of an indictment for murder the state seeks to ascertain the intent with which the fatal blow was struck. To hold it concluded by the statement of the prisoner would convert a solemn trial into a farce. The location and character of the wound inflicted, the nature of the weapon selected, the time, place and circumstances of the occurrence must all be considered. If the inferences reasonably deduced from these will not square with the prisoner's declaration as to his state of mind, the jury would clearly be warranted in rejecting such declaration.

So here, if an examination of the acts of the parties and their attitude towards each other, during the entire contract period covering many months, will fairly support the inference reflected in the verdict, the learned trial court was right in submitting the question to the jury under proper instructions, and the single contention of the defendant has no substantial foundation on which it can rest.

The plaintiffs had contracted to furnish the material and do the work necessary to plaster fifty-four two-story brick dwelling houses in the city of Philadelphia for one Myers, in a good and workmanlike manner according to certain draw-

ings, plans and specifications, and to the satisfaction of the said owner. The latter in turn contracted to pay to the plaintiffs, in proportionate weekly payments as the work progressed, the sum of $3,402. The contract provided that the specifications were to be deposited with the Central Trust & Savings Company, the present defendant; that the work should be prosecuted with such force of workmen "as shall be satisfactory" to Myers or the company. If, in the opinion of either, there was a failure in this respect, after notice to the plaintiffs, a summary remedy was provided. No charge for extra work could be allowed unless agreed to in writing signed by Myers and approved by the company; nor could the contract be assigned without the written consent of both. Thus it will be seen that the rights and powers reserved in the original contract to the present defendant indicate that it had a real and substantial interest in the improvement. The company then executed and delivered to the plaintiffs a written undertaking to guarantee to the plaintiffs the payment of the said sum of $3,402, when and as the said amounts might become due and payable, under the terms of the contract already referred to upon vouchers signed by the said Myers and upon the approval of the lathing and plastering by said company.

Our common experience in such matters teaches us that in the performance of such a contract the plaintiffs would not undertake to entirely complete the work upon one house before beginning another. As the work then would ordinarily be done, the character of the payments provided for in this contract would give both to the owner and to the defendant, acting for him, abundant opportunity to inspect and determine the quality of the work as it progressed.

Leaving aside for the moment certain matters as to which the testimony is in conflict and looking only to the evidence adduced by the plaintiffs, the jury would be warranted in finding that the work done measured up to the requirements of the contract; that as it progressed vouchers were regularly made out by the owner and delivered to the plaintiffs, and that upon presentation of these vouchers the money called

for in them was paid over by the defendant; that in this way twenty-one separate vouchers aggregating the sum of $3,182 had been delivered to the plaintiffs and the corresponding amounts of money paid to them. This left but a balance of $220 due to them under the contract. Each one of the vouchers referred to was, not only in legal effect but in actual form, a certificate, both by the owner and the defendant, that the work had been duly inspected as it progressed; that it conformed with the requirements of the plans, specifications and contract, and that the money therein called for was actually due to the plaintiffs. When the work had been completed and the last voucher for the final balance was demanded, the owner refused to furnish it. The testimony of the plaintiffs is that even then he did not claim that his refusal to sign the voucher was because of any act or default on the part of the plaintiffs. They testify that sometimes he gave no reason for his refusal; other times he alleged that he was out of money; that he offered to give a note for the balance, etc. They further offer evidence to show that when the final payment was demanded from the defendant, its refusal to pay was not based on any disapproval of the work, but for the reason that there was no money. And this too in the face of their own admission that all of the money necessary to entirely pay the plaintiffs had been deposited with the defendant company, and that during all of the contract period it was regarded by all the parties as the real paymaster from whom the plaintiffs were to receive their money. How did the $220 yet unpaid to the plaintiffs, and which the defendant at one time admittedly had in its hands, become diverted to some other use? Could it have been without joint action and a joint understanding between the owner and the defendant?

Had no testimony whatever been offered by the defendant, we cannot see how the learned trial court could have declared as matter of law that there existed in the minds of either the owner or the officers of the defendant an honest conviction that the work had not been done according to the terms of the contract, and therefore that the plaintiff could not recover. After having, as already stated, solemnly declared upon

twenty-one different occasions that the work had been done in accordance with the contract, some explanation was necessarily due to account for the sudden change in the attitude of the owner and of the defendant who was paying out his money at his direction. In the absence of such explanation, the jury might well infer that the position taken by the owner in regard to the last payment was either the result of a sudden whim or caprice, or was but a subterfuge to avoid the payment of money that he justly owed. If he was thus not warranted in refusing to sign the voucher, the jury might further find from the evidence that the defendant was acting merely under his direction and not upon any independent ground in refusing to pay the money that had been earned. As we have seen, the owner and the defendant seem to have acted in perfect harmony throughout the entire transaction. Each time when he approved the work, its approval followed. Each time when he vouched, it paid without question. When he suddenly refused the last voucher, under circumstances from which a jury could find that he was not acting in good faith, the defendant just as suddenly refused to give its approval and declined to pay. Its officer admits that it has not now in its possession the balance of the money originally deposited with it for the express purpose of paying the plaintiffs' claim. As we have already indicated, the appropriation of this money to some other use of the owner might well lead to the inference that the two were acting under a mutual arrangement in refusing the last item of the plaintiffs' claim. We are of the opinion, therefore, that under the pleadings and the whole of the evidence there was raised an issue of fact to be submitted to a jury under proper instructions.

It is quite true that considerable evidence was offered by the defendant tending to show that the work done by the plaintiffs was negligent and careless from the beginning; that complaint was frequently made on these grounds, and that the various vouchers were signed only on the faith of the promises made by the plaintiffs that defective workmanship would be replaced and the contract faithfully performed. All of these, however, would but raise a conflict of evidence

upon disputed questions of fact, the result of which would necessarily be a submission of the case to the jury. For these reasons we think the learned trial court was right in refusing to direct a verdict for the defendant. And this being so, his refusal to subsequently enter judgment non obstante veredicto necessarily followed.

Judgment affirmed.